601 A.2d 872

**Webster C. MORIARTA, Appellant,**

**v.**

**STATE COLLEGE AREA SCHOOL DISTRICT, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 1, 1991.

Decided Jan. 2, 1992.

360

Robert P. Rea, for appellant.

Charles Bruno and Tamara L. Greenfield, for appellee.

Before COLINS, PELLEGRINI, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Webster C. Moriarta (Moriarta) appeals an order of the Centre County Court of Common Pleas (trial court), which sustained State College Area School District's (School District's) preliminary objections in the nature of a demurrer. We will affirm.

On October 11, 1990, Moriarta filed a complaint in mandamus[1] against the School District. Therein, he requested the trial court to enter an order directing the School District to grant him a hearing in connection with the School District's termination of his employment as head baseball coach. The School District filed preliminary objections which Moriarta successfully countered by amending

---

1. Mandamus is an extraordinary writ which seeks to compel the performance of a ministerial act or mandatory duty where there is a *clear* legal right in the plaintiff, a corresponding duty in the defendant and absence of any other appropriate and adequate remedy. *Nicolella v. Trinity Area School District School Board,* 444 Pa. 544, 281 A.2d 832 (1971).

his complaint, whereupon the School District filed a second set of preliminary objections in the nature of a demurrer. The trial court sustained this latter set of preliminary objections, concluding that Moriarta was not entitled to a hearing under either the Local Agency Law [2] or the Public School Code of 1949.[3]

On appeal, Moriarta presents the sole issue of whether the School District's failure to afford him notice and a hearing prior to terminating him as head baseball coach violated Section 514 of the Public School Code of 1949 (School Code). In resolving this issue, we will, of course, proceed in accordance with our scope of review which requires us to affirm the trial court's determination unless we find that the trial court abused its discretion or committed an error of law. *Rok v. Flaherty*, 106 Pa.Commonwealth Ct. 570, 527 A.2d 211 (1987).

Material factual allegations in Moriarta's amended complaint, which must be accepted as true for purposes of this appeal,[4] indicate that he was employed as a professional tenured employe of the School District and, by supplemental contract dated February 12, 1990, was also employed as the School District's head baseball coach. Moriarta further alleged that the February 12, 1990 supplemental contract, which contained no definite term of employment, was terminable by either party upon sixty days previous written notice and that he was informed by letter dated June 25, 1990 that the School District's Board of School Directors would act on terminating his contract as head baseball coach at its regular meeting on September 10, 1990, which

**2.** 2 Pa.C.S. §§ 551–555, 751–754.

**3.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

**4.** Because a demurrer, such as that of the School District here, tests a complaint's legal sufficiency, the only issue presented is whether the complaint's factual allegations, if ultimately proven, are sufficient to entitle the plaintiff to relief. *Gordon v. Lancaster Osteopathic Hospital Association, Inc.,* 340 Pa.Superior Ct. 253, 489 A.2d 1364 (1985).

action was taken.[5]   In the interim, Moriarta requested a hearing before the Board of School Directors.

Moriarta asserts that the School District's failure to provide him notice of the reasons for his removal as head baseball coach and a hearing prior thereto violates the statutory procedures and protections afforded school district employes under Section 514 of the School Code.   This section provides in relevant part that:

> The board of school directors in any school district, except as herein otherwise provided, shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to *remove* any of its officers, employes, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct. . . .

24 P.S. § 5–514 (emphasis added).

Section 514, in our opinion, is not applicable here.   As pointed out by the trial court:

> Mr. Moriarta was not 'removed' as a tenured professional employee.   His appointment to the extra-curricular activity as head baseball coach was terminated in accordance with the provisions of the contract which he signed.   The word 'removal' means discharge or dismissal and does not include termination at the expiration of a contract for employment.   *Shaner v. Centennial School District*, 65 [Pa.D.] & C.2d 598 (Bucks County, [sic] 1974).[6]

**5.** The termination of Moriarta's supplemental, extracurricular contract in no way affected his regular professional employe contract with the School District.

**6.** *Compare Tishock v. Tohickon Valley Joint School Board*, 181 Pa.Superior Ct. 278, 124 A.2d 148 (1956) (the word "dismissed" as used in Section 1108 of the School Code, 24 P.S. § 11–1108, refers to severance of employment *during* the term of a contract and not to a failure or refusal to retain *after* the contract has expired); *contrast Hetkowski v. School District of Borough of Dickson City*, 141 Pa.Superior Ct. 526, 15 A.2d 470 (1940) (a school district employe was "removed," thereby triggering notice and hearing safeguards, when the employe was discharged *prior* to expiration of her one-year contract); *see also Anderson v. Board of Public Education of School District of City of Pittsburgh*, 152 Pa.Superior Ct. 486, 33 A.2d 68 (1943) (in interpreting

*Moriarta v. State College Area School District* (No. 90–2592, filed July 10, 1991), slip op. at 3 (footnote added).[7]

█  Moriarta alternatively maintains that "[t]he use of annual employment contracts or employment contracts terminable at the discretion of a school district [8] are [sic] nothing more than an attempt to circumvent the notice and hearing requirements of the [School Code], and [as] such, are illegal and in violation of public policy." Appellant's brief, p. 14 (footnote added). We decline to hold, as Moriarta appears to urge us, that all such contracts are illegal and violative of public policy. We hasten to add, however, that this does not mean that no such contracts can ever be found illegal and violative of public policy.

█  However, we have found no authority, nor has either party directed us to any such authority, upon which we can conclude that the instant contract is illegal and violative of public policy. Nothing in the School Code, insofar as we can ascertain, precludes use of annual employment contracts or employment contracts terminable by either party for extracurricular positions.[9] The School Code does not

Section 406 of the Act of May 18, 1911, P.L. 309, which contained virtually identical language as Section 514, involved herein, and from which Section 514 derived, *see* 24 P.S. § 5–514); Historical Note, the Superior Court stated that Section 406 "was enacted to make it clear that the board had the right to discharge any officer, appointee or employee—notwithstanding he had a contract for the school year— *before the termination of his contract,* for incompetency, intemperance, neglect of duty, violation of any of the school laws or other improper conduct." *Id.,* 152 Pa.Superior Ct. at 493, 33 A.2d at 71 (emphasis deleted and added).

7. Moriarta also asserts that he did not knowingly and voluntarily waive his rights to notice and a hearing under Section 514; that such rights could not be waived, even if done so knowingly and voluntarily; and that the School District cannot, by its choice of contract, remove rights to which he is entitled under the School Code. Inasmuch as we have found Section 514 inapplicable here, Moriarta had no rights to notice and a hearing thereunder. Accordingly, we likewise reject these additional assertions.

8. We stress that Moriarta could have also terminated the contract here upon sixty days previous written notice.

9. The case of *Hetkowski v. School District of Borough of Dickson City,* 141 Pa.Superior Ct. 526, 15 A.2d 470 (1940), *e.g.,* appears to implicitly

even appear to mandate use of written contracts for extra-curricular positions, let alone the form thereof.[10]

Section 511 of the School Code, 24 P.S. § 5–511, which seems to be the only provision specifically concerned with extracurricular activities and assignments or employments related thereto, authorizes boards of school directors to (1) "prescribe, adopt, and enforce ... reasonable rules and regulations as [they] may deem proper, regarding ... the management, supervision, control, or prohibition of ... athletics" [11] and (2) "employ or assign any school employe to serve in any capacity in connection with any [extracurricular] activities." [12] This section has been construed as extending broad authority and discretion to school boards over extracurricular activities [13] and nothing therein either specifies or restricts the manner in which a board of school directors employs a school employe to serve in an extracurricular capacity. Moreover, we note in passing prior judicial recognition of a long-established custom traditionally allowing far greater flexibility in the selection of coaches than would be allowed in the hiring and firing of teachers. *See Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association*, 57 Pa.Commonwealth Ct. 195, 426 A.2d 1203 (1981).

condone such practices. *See also Shaner v. Centennial School District*, 65 Pa.D. & C.2d 598 (1974).

**10.** We note in passing Section 1121 of the School Code, 24 P.S. § 11–1121, which requires all contracts with professional employes to be in writing and provides for notice and a hearing upon termination. However, teachers, acting in extracurricular capacities, are not "professional employes" as that term is defined by Section 1101(1) of the School Code, 24 P.S. § 11–1101(1). *See also Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association*, 57 Pa.Commonwealth Ct. 195, 426 A.2d 1203 (1981).

**11.** Subsection (a)(1) of Section 511.

**12.** Subsection (c)(3) of Section 511.

**13.** *See Greater Johnstown Area Vocational–Technical School v. Greater Johnstown Area Vocational–Technical Education Association*, 57 Pa.Commonwealth Ct. 195, 426 A.2d 1203 (1981).

For the foregoing reasons, we will affirm the order of the trial court.[14]

## ORDER

AND NOW, this 2nd day of January, 1992, the order of the Court of Common Pleas of Centre County, dated April 22, 1991, at No. 90–2592, is hereby affirmed.

---

**14.** The trial court's order was dated and filed on April 22, 1991 and the opinion in support thereof was dated and filed on July 10, 1991. The April 22, 1991 order was appealed here; not the July 10, 1991 opinion in support thereof as indicated on the covers of both parties' briefs. *See* C.R.; Notice of Appeal.